# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JEFFREY T. BOWSHIER,[1]        :

       Petitioner,        :      Case No. 3:11cv00302

vs.        :      District Judge Thomas M. Rose
                       Chief Magistrate Judge Sharon L. Ovington

WARDEN, Chillicothe        :
Correctional Institution,

       :

       Respondent.        :

       :

---

## REPORT AND RECOMMENDATIONS[2]

---

## I.    <u>Introduction</u>

In November 2005, the Springfield and Dayton Police Departments conducted an investigation that resulted in the arrest of Petitioner Jeffrey T. Bowshier.  His arrest occurred after he gave money, the title to two vehicles, and two kilograms of cocaine to an undercover Dayton police officer who was assigned to the Dayton Drug Enforcement Administration task force, as payment for 200 pounds of marijuana.  A later search of Bowshier's residence led to the discovery of marijuana and cocaine.

---

[1] State records indicate that Petitioner's last name is spelled "Bowshier," which is slightly different than the spelling in his habeas Petition. *E.g.,* Doc. #1, PageID at 18-51. Despite this, there is no issue that both this case and the state records submitted by Respondent concern Petitioner Jeffrey T. Bowshier.

[2] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Bowshier was indicted and charged with various felony drug trafficking and possession offenses. His case proceeded to trial where a jury found him guilty of, among other offenses, trafficking in drugs with the specification that he is a major drug offender. (Doc. #6, PageID at 117). The trial court sentenced Bowshier to serve a total of 30 years imprisonment. *Id*. The Ohio Court of Appeals reversed Bowshier's convictions as follows:

> We conclude that the trial court erred in failing to allow a continuance as a remedy for the State's discovery violations. We further find that Bowshier's conviction on one drug abuse charge is against the manifest weight of the evidence – the evidence does not establish that Bowshier was even in constructive possession of a substantial amount of the drugs forming the basis for that count of the indictment. Finally, we conclude that the trial court abused its discretion when it refused to include a jury instruction on entrapment.

*Id*., PageID at 213. On remand, Bowshier proceeded to a second jury trial on one count of drug trafficking and two counts of drug abuse. The jury found him guilty on all counts, and the trial court sentenced him to serve a total of 15 years in prison. *Id*., PageID at 281.

Bowshier brings this case through counsel Brandon D. Marlow seeking a Writ of Habeas Corpus under 28 U.S.C. §2254. The case is before the Court upon Bowshier's Petition and attached Exhibits (Doc. #1), Respondent's Return of Writ and attached Exhibits (Doc. #6), and the record as a whole.

Bowshier asks the Court to find that his convictions at his second trial violated "his Federal Constitutional Rights ...," and as a result, order his release from incarceration along with any other relief to which he may be entitled. (Doc. #1, PageID at 15). He seeks this relief based on three grounds: (1) his rights under the Sixth Amendment were violated when

2

the trial court improperly dismissed a potential juror, (2) his rights under the Due Process

Clause were violated because his conviction was not based on sufficient evidence and

because his appellate counsel provided constitutionally ineffective assistance by failing to

raise this issue; and (3) for additional reasons, his rights under the Due Process Clause were

violated because his conviction was not based on sufficient evidence.  (Doc. #1, PageID at 5-

8).

## II.    **Factual Background**

The Court of Appeals of Ohio, Second District, Clark County, set forth the facts of

this case as follows:

> In September 2005, Detective Scott Woodruff, an officer assigned to the
> Narcotics Unit of the Springfield Police Department, was contacted by
> Detective Jorge Delrio, a Dayton police officer who was assigned to the
> Dayton Drug Enforcement Administration (DEA) task force.  Delrio told
> Woodruff that an individual named Scott Snook wanted to provide information
> to the narcotics unit regarding criminal activity by Bowshier.  Woodruff met
> with Snook on September 29, 2005.
>
> Based on information from Snook, Woodruff contacted Delrio about
> initiating an undercover investigation of Bowshier using Snook as a
> confidential informant.  Beginning on October 1, several telephone
> conversations occurred between Snook and Bowshier.  Snook told Bowshier
> that he had located a source of a supply of drugs from Arizona and he asked if
> he could give Bowshier's telephone numbers to the source.  Based on those
> conversations, Woodruff and Delrio decided that Delrio would pose as a
> marijuana and cocaine trafficker from Arizona and would offer to sell 200
> pounds of marijuana for $800 per pound, for a total of $160,000.  Delrio would
> accept $40,000 and two kilograms of cocaine as an initial payment.  Each
> kilogram of cocaine would be in lieu of $20,000 in cash.
>
> On October 10, 2005, Delrio called Bowshier at one of his telephone
> numbers and arranged a meeting on October 14.  On October 14, Delrio called

3

Bowshier and told him to meet him at the Sam's Club parking lot on Miller Road in Dayton, Ohio, near the intersection of Interstates 75 and 70. Approximately 20 minutes later, Bowshier left his residence at 315 North Burnett Road in Springfield, Ohio, and drove directly to the meeting location. Woodruff, who was conducting surveillance of Bowshier's residence, followed Bowshier to Sam's Club. At Sam's Club, Delrio showed Bowshier 200 pounds of marijuana that he supposedly was selling to another buyer.

In late October and early November, Delrio made several additional telephone calls to Bowshier. When Bowshier indicated that he did not have $40,000 in cash, the agreement was modified to allow Bowshier to pay with the two kilograms of cocaine and $21,000 in case and to provide two vehicle titles (one for a pickup truck and one for a motorcycle) as collateral. Bowshier agreed to pay an additional $80,000 on the next load of drugs that Delrio would supply at a later time. According to Woodruff, the investigation did not terminate after Bowshier stated that he could not get $40,000 in cash because "Mr. Bowshier wanted to continue completing the deal."

On November 14, 2005, Delrio contacted Bowshier and told him that he would be in the area on November 17 to make the exchange and he would call around noon on that day to let him know exactly where he would be. Delrio also told Bowshier not to bring anything to haul away the drugs, because he (Delrio) would provide something for him.

On November 17, before the meeting time, a U-Haul truck containing the marijuana (which was seized from prior investigations) was placed to the rear of the hotel. Several members of the SWAT team waited in the parking lot in a larger rental vehicle. Woodruff and Detective Keri Frasco also conducted surveillance of the residence at 315 North Burnett Road. At approximately 10:30 a.m., Delrio contacted Bowshier, who advised him (Delrio) that he (Bowshier) was 20-35 minutes from Springfield and was returning to the area. At 11:03 a.m., Delfrio contacted Bowshier again, and notified him that the meeting place would be the Days Inn Hotel on Leffel Lane. At 11:24 a.m., Bowshier came to the residence on North Burnett in a white van, entered the home for a few minutes, and returned to the van carrying a white plastic grocery bag.

Bowshier drove directly to the Days Inn parking lot. Woodruff followed him from his residence to the hotel and stopped on the west side of the hotel. Other police units were situated on each side of the hotel to prevent

4

any escape by Bowshier.

Bowshier provided the white grocery bag to Delrio. The bag contained two kilograms of powder cocaine, an Ohio title certificate for a 2001 Suzuki motorcycle, an Ohio title certificate for a 2001 Chevrolet truck, and $20,975. Delrio walked Bowshier to the U-Haul and commented about the poor quality of the marijuana. Delrio told Bowshier to drive the marijuana wherever he was going to take it and to bring back the U-Haul. Bowshier got in the driver's seat of the U-Haul, which had been intentionally disabled by the police, and attempted unsuccessfully to drive away. Bowshier was surrounded and arrested.

After Bowshier's arrest, Woodruff advised him of his Miranda rights and informed him that he would be preparing a search warrant for 315 North Burnett Road.

(Doc. #6, Exh. 20 at Page ID# 345-48) (footnote omitted).

## III.  Bowshier's Claim of Insufficient Evidence

### A.  The Parties' Contentions

Bowshier asserts in this third ground for relief:

Petitioner's conviction was not based upon sufficient evidence; therefore, he was convicted in violation of his Due Process Rights.

<u>Supporting facts</u>:  As to Petitioner's conviction for possession of marijuana and part of the cocaine, the evidence presented to the jury was that the drugs were found in a home shared by Petitioner and multiple other occupants, in an area equally accessible to all occupants. The State Court determined that these drugs were the same type of drugs involved in the undercover operation, that Petitioner had constructive possession of the drugs. This is the only evidence that the State presented as to Petitioner's possession of these drugs.

(Doc. # 1 at Page ID # 8).

Respondent contends that Bowshier has waived federal habeas review of his

insufficient-evidence claim by committing procedural missteps in the Ohio courts. Respondent also contends that Bowshier's insufficient-evidence claim lacks merit.

### B.     Bowshier's Procedural Default

To obtain federal habeas review, a habeas petitioner must first raise his federal constitutional claims in state court by following the state's adequate and independent procedural rules. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F. 3d 155, 160 (6th Cir. 1994). If the petitioner fails to follow the state's adequate and independent procedural rules, and if the state courts enforced those rules against him, then his procedural missteps – "procedural default," in habeas lexicon – might result in a waiver of one or more of his claims for purposes of federal habeas review. *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

Bowshier acknowledges that he did not raise on direct appeal his claim that the evidence was insufficient to support his conviction in violation of the Due Process Clause. (Doc. #1, PageID at 7, 9). A review of his State Appellate Briefs and Memorandum in Support of Jurisdiction confirms that he did not raise his federal due-process claim on direct appeal in the Ohio Court of Appeals or the Ohio Supreme Court. *See* Doc. #1, Exhibits 18, 24. To avoid procedural default, Bowshier was required to present this particular claim to the state's highest court and his failure to do so constituted a procedural default. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844–45, 848, 119 S.Ct. 1728 (1999). In addition, Ohio's doctrine

6

of res judicata prevents Bowshier from returning to state court to raise the claim that his rights under Due Process were violated because the evidence was insufficient to support his convictions. *See Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004). He therefore committed a procedural default as to his Third Ground for Relief.[3]

A petitioner's procedural default may be excused if he demonstrates "cause" for his procedural misstep and prejudice resulting from the misstep. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *see also Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004) (and cases cited therein). Demonstrating "cause" requires showing that an objective factor external to the defense impeded petitioner's or counsel's efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Bowshier contends that he did not raise his federal insufficient-evidence claim on direct appeal due to his appellate counsel's failure to do so. He further states that he

---

[3] A four-factor test is applied to determine whether a procedural default committed by Bowshier, an inmate in Ohio's custody, bars federal habeas review of his claims:

1. Whether there is a firmly established Ohio procedural rule with which he failed to comply;

2. Whether the Ohio court actually enforced the rule against him;

3. Whether his failure to comply with the Ohio procedural rule constitutes an adequate and independent state ground for barring federal habeas review; and

4. Whether both "cause" and "actual prejudice" exist to excuse the failure to follow Ohio's procedural rules or whether the absence of federal habeas review will result in a miscarriage of justice.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001)(and cases cited therein). It is well-settled that res judicata in Ohio meets the pertinent parts of the *Maupin* test. *See Williams*, 380 F.3d at 966-67; *see Jacobs*, 265 F.3d at 417.

"attempted to raise the issue by reopening his direct appeal, but the request to do so was denied by the Second District Court of Appeals."  (Doc. #1, PageID at 7). Assuming in Bowshier's favor that he seeks to establish "cause" for his procedural default by claiming his appellate counsel provided constitutionally ineffective assistance, such "cause" does not exist in the present case.

"Ineffective assistance of appellate counsel, if it rises to the level of a constitutional violation, can serve as cause to excuse the procedural default of claims brought in a habeas corpus proceeding." *Burton*, 391 F.3d at 773; *see Edwards*, 529 U.S. at 451, 120 S.Ct. 1587. For the reasons set forth below, *infra*, §IV, Bowshier's counsel on direct appeal did not provide constitutionally ineffective assistance.  Consequently, counsel's representation of Bowshier on direct appeal does not establish cause for Bowshier's procedural default.  *See Burton*, 391 F.3d at 773; *see also Edwards*, 529 U.S. at 451, 120 S.Ct. 1587.

Lastly, a federal habeas court can make an exception to the requirement to show cause and prejudice if the petitioner demonstrates that without review of his federal claim "a fundamental miscarriage of justice" is highly probable to result.  *Edwards,* 529 U.S. at 451. A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). However, neither Bowshier's petition, nor the information contained in the record reflects that a miscarriage of justice will occur absent federal habeas relief.  Accordingly, Bowshier's

8

procedural default bars federal habeas review of his third ground for relief.

**C.      The AEDPA and *Jackson v. Virginia***

Respondent contends that Bowshier's claim of insufficient evidence lacks merit and sets forth no basis for relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[4]  Respondent accurately explains that Bowshier's claim of ineffective assistance of appellate counsel focuses on Bowshier's conviction of possessing marijuana, stemming from the marijuana police found in the basement of the home where Bowshier lived.

Under the AEDPA, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  28 U .S.C. § 2254(d)(1)." *Greene v. Fisher,* __U.S.__, 132 S.Ct. 38, 42 (2011).

The [AEDPA's] "contrary to" clause is satisfied "if the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme] Court has on a set of materially indistinguishable facts." *Villagarcia v. Warden,* 599 F.3d 529, 533 (6th Cir.2010) (brackets in *Villagarcia* ) (quoting, in part, *Williams,* 529 U .S. at 413).  "Under [the AEDPA's] 'unreasonable application' clause ..., a federal habeas court may not issue the writ

─────────────────

[4] Codified in large part in 28 U.S.C. §2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

9

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Villagarcia,* 599 F.3d at 533 (quoting *Williams,* 529 U.S. at 411); *see Harrington v. Richter,* 562 U.S. __, 131 S.Ct. 770, 785 (2011).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *McKinney v. Ludwick,* 649 F.3d 484, 488 (6th Cir. 2011) (quoting in part *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357 (2002)) (other citations omitted).

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Fiore v. White*, 531 U.S. 225, 228-29 (2001).  Under *Jackson*, the court must determine if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found, beyond a reasonable doubt, each essential element of the crime.  *Jackson*, 443 U.S. at 319, 324.

In the instant federal habeas corpus case, the AEDPA subjects Bowshier's claim of insufficient evidence to a second level of deferential review:  he must demonstrate that the Ohio Court of Appeals failed to apply the correct standards under *Jackson* or applied the *Jackson* standards in an objectively unreasonable manner.  *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009)(and cases cited therein).  "What is more, a federal court may not

overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, __U.S. __, 132 S.Ct. 2, 4, 181 L.Ed. 2d 311 (2011).

    **D.**    **Analysis**

On Bowshier's direct appeal, the Ohio Court of Appeals addressed Bowshier's claim that his conviction was against the manifest weight of the evidence. (Doc. #6, Exh. 20 at Page ID 344). But the appellate court did not specifically address the sufficiency of the evidence as a federal constitutional claim because Bowshier had not framed his claim under *Jackson* or similar Supreme Court cases. Respondent does not contend that this constituted a procedural default.

When Bowshier returned to the Ohio Court of Appeals with his Application to Reopen Appeal, he raised his insufficient-evidence claim, citing *Jackson* and *In re Winship*, 387 U.S. 358, 363, 90 S.Ct. 1068 (1970). *See* Doc. #6, PageID at 462. The Ohio Court of Appeals recognized, "While there are legal differences between the sufficiency test and the manifest weight test, they are not controlling here. Our previous opinion thoroughly discussed the evidence, and trial counsel was not ineffective for not separately assigning insufficiency of evidence as error." *Id*., PageID at 479. In this manner, the Ohio Court of Appeals relied on its prior rejection of Bowshier's manifest-weight claim to reject his insufficient-evidence claim. *Id*. In light of this, it is necessary to consider under the AEDPA the Ohio Court of Appeals' reasons for rejecting Bowshier's manifest-evidence claim. *See*

11

*Nash v. Eberlin*, 258 Fed. Appx. 761, 765-66 (6th Cir. 2007).

On Bowshier's direct appeal, the Ohio Court of Appeals explained:

As to ... possession of marijuana, Bowshier asserts that the State failed to prove that he possessed – actually or constructively – the drugs found in the black duffel bag.

[Ohio] R.C. 2925.11(A), which defines drug possession, states: "No person shall knowingly obtain, possess, or use a controlled substance." Possession means "having control over a thing or substance," R.C. 2925.01(K), and possession may be either actual or constructive. *State v. Mabry*, Montgomery App. No. 21569, 2007-Ohio-1895.

"Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Sisson*, Montgomery App. No. 22173, 2008-Ohio-3490, at ¶ 10. For constructive possession to exist, the person must be aware of the presence of the object. *State v. Hankerson* (1982), 70 Ohio St.2d 87, 91; *State v. Givens*, Clark App. No. 2005-CA-42, 2005-Ohio-6670, at ¶10. The State may prove constructive possession solely through circumstantial evidence. *State v. Trembly* (2000), 137 Ohio App.3d 134, 141; *State v. Townsend* (Aug. 24, 2001), Montgomery App. No. 18670. However, possession may not be inferred solely from the defendant's ownership or occupation of the premises upon which the object is found. R.C. 2925.01(K).

                                      ***

The State contends that Bowshier's visit to the home before the alleged sale to retrieve cocaine and the fact that cocaine was in plain view are circumstantial evidence that the cocaine belonged to Bowshier. We have already rejected the 'plain view' argument, because it is factually incorrect. Unlike the items in Jakes's bedroom, however, the duffel bag was found in an area that was apparently accessible to all occupants of the house. Therefore, the issue would be whether other evidence indicated that Bowshier had constructive possession of the duffel bag.

In *State v. Scalf* (1998), 126 Ohio App.3d 614, 710 N.E.2d 1206, the defendant was present on the steps of his home when his son sold a

12

confidential informant a bag of cocaine.  After obtaining a search warrant, the police searched the home three days later and found five rocks of cocaine in the common area of the kitchen and a bag, spoon, and tray with suspected cocaine residue in an upstairs sitting room.  The defendant's personal papers were also found in the sitting room.  126 Ohio App.3d at 617.  Although the defendant denied that the drugs were his, the Eighth District Court of Appeals concluded that the conviction for possession was supported by sufficient evidence.  *Id.* at 619.

***

As in *Scalf*, there is additional evidence in this case in the form of Bowshier's participation in an alleged drug sale.  The police staked out Bowshier's residence and saw Bowshier enter the house empty-handed about twenty minutes before the proposed exchange.  Bowshier was inside for about five minutes and then exited, carrying a white plastic grocery bag.  A female had entered the residence and had stayed inside that morning, but no one entered or exited after Bowshier left.  Bowshier then drove directly to the exchange site and showed Del Rio a white plastic bag containing money and the suspected cocaine.

In view of these facts, we agree with the State that Bowshier's trip to the house was circumstantial evidence that could have supported a charge connected with the contents of the black duffel bag.  A jury could reasonably infer under the circumstances that Bowshier had constructive possession of the drugs in the duffel bag.

***

Woodruff testified that 200 pounds of marijuana is more than one would purchase for personal use, and the jury could have reasonably inferred that Bowshier would package the marijuana for sale.  The duffel bag in the basement contained marijuana packaged in seven gallon-size zip-lock bags and some cocaine.  "Shake" was found openly in the kitchen.  In the first trial, we found that Bowshier's trip to the house in connection with his attempted purchase of marijuana from Delrio was circumstantial evidence that he had constructive possession of the duffel bag and the cocaine within it; similarly, the facts would support the inference that he had constructive possession of the marijuana that was in the duffel bag with the cocaine.

13

(Doc. #6, Exh. 20, PageID at 353-56).

Under *Jackson*, the evidence was sufficient to support Bowshier's conviction of marijuana possession.  *See id*.  The evidence showed that Detective Woodruff witnessed Bowshier drive to the residence at 315 North Burnett Road, leave his vehicle empty-handed, go into the house, and return to his vehicle carrying a white grocery sack. Detective Keri Frasco, who was conducting surveillance on the residence, observed the same thing. Detective Woodruff then followed Bowshier directly from the North Burnett residence to the Days Inn. There Bowshier handed undercover agents the white bag, which contained two kilos of cocaine, $20,975 in cash, and two vehicle titles.  In return, agents showed Bowshier a U-Haul with two-hundred pounds of marijuana, gave him the keys to the U-Haul, and instructed him to take it and be back in an hour.  Bowshier complained about the quality of the marijuana.  (Doc. #6, PageID at 683).

Once Bowshier got into the U-Haul and attempted to start it, agents arrested him. Agents had previously disconnected the battery to prevent Bowshier from leaving with the marijuana.  Following the arrest, Detective Woodruff obtained a search warrant for the residence at 315 North Burnett Road.  The testimony established that Bowshier resided there: it was the address he provided as his residence, he was witnessed to be coming and going from that address, and he gave officers the key to the front door off his key chain.  Search of the residence revealed a duffle bag in the basement.  The duffel bag contained seven gallon-size Zip-lock baggies containing marijuana.  Furthermore, as noted, on the day of his arrest,

14

Bowshier was witnessed going into and coming out of that residence before heading off to buy two hundred pounds of marijuana.

Viewing all this evidence in the light most favorable to the prosecution, a rational trier of fact could have found Bowshier guilty beyond a reasonable doubt of possession under *Jackson*. Even if other conflicting inferences could be drawn from the evidence, *Jackson* requires the federal habeas court to "'presume – even if it does not affirmatively appear in the record – that the trier of fact resolving any such conflicts in favor of prosecution, and must defer to that resolution.'" *Cavazos*, __U.S. at __, 132 S.Ct. at 6 (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781).  As a result, Bowshier's claim that his conviction on one count of possession of marijuana violated his rights under the Due Process Clause lacks merit. *See id*.; *see also Jackson*, 443 U.S. at 326.

Accordingly, Bowshier is not entitled to a writ of habeas corpus on his third ground for relief.

**IV.**    **Ineffective Assistance of Appellate Counsel**

    **A.**    **The Parties' Contentions**

In ground two of his habeas Petition, Bowshier asserts that his appellate counsel provided constitutionally ineffective assistance by omitting the claim that "[his] conviction was not based upon sufficient evidence; therefore he was convicted in violation of his Due Process Rights."  (Doc. #1 at Page ID #7).  Respondent contends that Bowshier's claim is without merit, as he was not prejudiced by his attorney's performance and that there "is no

15

reasonable probability that, had his appellate attorney added an insufficiency claim on appeal, this would have produced a different outcome in the case." (Doc. #6 at Page ID #90). Bowshier raised the claim of ineffective assistance of counsel before the Ohio Court of Appeals in an application to reopen his appeal pursuant to App.R. 26(B). (Doc. #6, Exh. 27 at Page ID #458). The appellate court denied Bowshier's application. (Doc. #6, Exh. 29 at Page ID #477).

### B.   Ineffective Assistance Of Counsel And The AEDPA

To establish constitutionally ineffective assistance of counsel, a convicted defendant must show that his trial counsel's acts, errors, or omissions fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064 (1984). This demanding standard requires the convicted defendant to establish that (1) defense counsel provided deficient performance and (2) the deficient performance prejudiced the defense so as to render his trial fundamentally unfair and the result unreliable. *Id.*

Even when a habeas petitioner establishes both *Strickland* prongs, he has not yet established that he is entitled to federal habeas relief.

> The Supreme Court has made clear that post-AEDPA claims of ineffective assistance of counsel brought by habeas petitioners will succeed only in very limited circumstances.... For [the petitioner] to succeed ..., he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the ... [state] Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

16

*Payne v. Bell,* 418 F.3d 644, 665 (6th Cir. 2005); *see Harrington v. Richter,* __U.S. __, 131 S.Ct. 770, 785 (2011).

In ruling on Bowshier's Application to Reopen, the Ohio Court of Appeals cited applicable Supreme Court law – specifically, *Strickland*, 466 U.S. 668 (1984) – and recited the correct legal standards for evaluating constitutional claims asserting ineffective assistance of counsel. In light of this, the Ohio Court of Appeals' decision was not contrary to clearly established Supreme Court case law. *See Smith v. Robbins,* 528 U.S. 259, 285–86, 120 S.Ct. 746 (2000) ("the proper standard for evaluating Robbins' claim that appellate counsel was ineffective ... is that enunciated in *Strickland* ...."). The issue, then, is whether the Ohio Court of Appeals' rejection of this claim constituted an unreasonable application of federal law clearly established by the Supreme Court. *See Greene,* __U.S. at __, 132 S.Ct. at 42.

In its decision rendered on May 20, 2010, the Ohio Court of Appeals addressed Bowshier's claim that his appellate counsel was ineffective for failing to raise the sufficiency of evidence issue on appeal. The appellate court acknowledged that "Bowshier is technically correct that the appellate attorney did not raise sufficiency of the evidence." (*Id*. at PageID# 479). However, the court concluded that Bowshier's appellate counsel had raised the issue of manifest weight, thereby leading the court to "thoroughly [discuss] the evidence." *Id*. Therefore, regardless of the fact that Bowshier's attorney had not "separately assign[ed] insufficiency of the evidence as in error," the issue had been sufficiently addressed by the court. *Id*. The appellate court concluded that "Bowshier has failed to establish that appellate

counsel's performance was deficient and/or that there is a reasonable probability that, but for counsel's failures, the outcome of this original appeal would have been different. Therefore, he has not demonstrated his claim of ineffective assistance of appellate counsel and the application to reopen is denied." (Doc. #6, Exh. 29 at Page ID #480).

The decision of the Ohio Court of Appeals was not an unreasonable application of *Strickland* because the claim appellate counsel declined to raise on direct appeal lacked merit. *See Supra*, §III. One factor applicable to evaluating an appellate counsel's performance is the strength or weakness of the arguments raised or omitted on direct appeal. *See Whiting v. Burt*, 395 F.3d 602, 616 n.8 (6th Cir. 2005). Review of the brief submitted by Bowshier's appellate counsel on direct appeal in the Ohio Court of Appeals revealed that he chose to litigate strong claims that required the Ohio Court of Appeals to address them in a lengthy analysis. *See* Doc. #6, Exhs. 18, 20. In addition, Bowshier's appellate counsel addressed the same evidence and litigated the same constructive-possession arguments in the Ohio Court of Appeals that Bowshier raises in the instant case. *See* Doc. #6, Exh. 18, PageID at 328, 331-33; *see also* Exh. 20, PageID at 353-56. Although in state court Bowshier's appellate counsel framed this claim under the theory that his marijuana conviction was against the manifest weight of the evidence, it was not constitutionally deficient performance to do so especially when Bowshier's *Jackson* claim was comparatively weak and lacked merit. Bowshier does not point to another factor indicating that his appellate counsel provided constitutionally deficient representation. *See Whiting*, 395 F.3d at 616 n.8 (listing factors). And there is no

18

indication in the Petition or in the record that appellate counsel's representation was so flawed that it prejudiced the outcome of Bowshier's direct appeal.  Under these circumstances, Bowshier's claim of ineffective assistance of appellate counsel lacks merit, and the AEDPA provides no basis for granting habeas relief to Bowshier on this claim.

Accordingly, Bowshier is not entitled to a writ of habeas corpus on his second ground for relief.

## V.    <u>Bowshier's First Ground For Relief</u>

Bowshier challenges the dismissal of one potential juror as follows:

<u>Ground One</u>:

> The Defendant was denied his Sixth Amendment Right to a Fair and Impartial Jury When [the Trial Court] Improperly Dismissed a Potential Juror.

<u>Supporting Facts</u>:

> The Trial Court dismissed a juror for just cause, at the State's request, after she indicated have [sic] a past association with Petitioner's family. This contact was brief and in the distant past. She clearly stated that she could render and [sic] fair and impartial verdict and refuted any inference that her opinions would not be swayed by any previous contact with Petitioner's family.

(Doc. #1, PageID at 5).

Respondent contends that this claim is not cognizable in a federal habeas action because "in a non-capital habeas case, a petitioner has no constitutional right to have any particular person sit on the jury."  (Doc. #6, PageID at 77).  To the extent this broad statement fails to recognize the guarantee of an impartial jury afforded by the Sixth Amendment (applicable here through the Fourteenth Amendment), Respondent's "cognizability" argument

19

is too broad.  *See Williams v. Bagley*, 380 F.3d 932, 943-44 (6th Cir. 2004) (citing *Morgan v. Illinois,* 504 U.S. 719, 726–27, 112 S.Ct. 2222 (1992); *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639 (1961)).  Yet, "cognizability" aside, neither Bowshier nor the record shows that his jury was impartial due to the absence of a particular juror whose "former stepfather had been friends with Bowshier's father when she was young."  (Doc. #6, PageID at 365).  On Bowshier's direct appeal, the Ohio Court of Appeals thoroughly reviewed the pertinent part of the trial transcript concerning voir dire of this potential juror. *Id*., PageID at 365-68. The Court of Appeals then explained:

> Bowshier claims that the trial court abused its discretion by dismissing the prospective juror based solely on her past association with Bowshier's father.  We disagree.  The prospective juror initially stated that she "just really [didn't] think that I would be a good juror" and that she "couldn't vote guilty for people that I know."  Although she later indicated that she "hoped" she would be a good juror and would follow the instructions given by the court, she still expressed that she did not know if she could find him guilty.  And, while the prospective juror stated that she would not judge Bowshier based on her former stepfather's and Teddy Bowshier's lifestyle of drugs use, the prospective juror had indicated that this case reminded her of that lifestyle.  Although it is clear that Juror #9 wanted to be honest and impartial, her responses to counsel's and the court's questions were somewhat ambiguous as to whether she could, in fact, judge the case impartially and without bias.  Having seen and heard her responses, the trial court could have reasonably been unpersuaded that she was able to judge the case impartially.

(Doc. #6, PageID at 368-69). Based on these permissible reasons for dismissing the potential juror, there is no indication in the record that the trial court violated Bowshier's rights under the Sixth Amendment.  *Cf. United States v. Shepard*, __F.3d__, 2014 WL 43214 at *5 (6th Cir. Jan. 7, 2014 ("The question of whether a trial court has seated a fair and impartial jury 'is

20

essentially one of credibility,' and 'the trial court's resolution of such questions is entitled, even on direct appeal, to special deference.'" quoting *Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885 (1984)). More significantly for present federal-habeas purposes, Bowshier does not point to a Supreme Court case in support of this claim and research does not reveal the existence of a Supreme Court case that directly supports Bowshier's Sixth Amendment claim. *Cf. Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222 (1992); *cf. also Williams*, 380 F.3d at 948-51 (and cases cited therein). As a result, the Ohio Court of Appeals' rejection of this claim was not contrary to, and did not involve an unreasonable application of, clearly established Sixth Amendment law determined by the Supreme Court.

Accordingly, Bowshier is not entitled to a writ of habeas corpus on his first ground for relief.

## VI.    Certificate of Appealability

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484. If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the

21

petitioner must show that jurists of reason would find it debatable whether the District Court

is correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

The conclusions reached in the instant Report are not debatable by jurists of reason and

the case does not otherwise present issues sufficient to encourage Bowshier to proceed

further.  Consequently, a certificate of appealability should not issue in this case.

### IT IS THEREFORE RECOMMENDED THAT:

1. Jeffrey T. Bowshier's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

2. Petitioner be denied leave to appeal *in forma pauperis* and any requested certificate of appealability; and,

3. This case be terminated on the docket of this Court.


January 7, 2014

                                        s/Sharon L. Ovington
                                          Sharon L. Ovington
                         Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).